IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 15-cr-00233-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MICHELLE R. PAUP,

      Defendant.

_____

**ORDER**
_____

      This matter is before the Court on the Notice of Appeal [Docket No. 80] filed by

defendant Michelle R. Paup.  Defendant appeals her conviction of theft of government

property of a value less that $1,000 and removal of theft detection devices after a jury

trial presided over by Magistrate Judge Kathleen M. Tafoya in Criminal Case No. 14-mj-

07006-KMT.  The Court exercises jurisdiction over this appeal pursuant to 18 U.S.C.

§ 3402 and Fed. R. Crim P. 58(g)(2)(D).  Neither party requested oral argument.

**I.  BACKGROUND**[1]

      On December 20, 2013, defendant went to the Army and Air Force Exchange

Service store (the "Exchange") at Buckley Air Force Base (the "Base") in Aurora,

Colorado.  Video surveillance showed that defendant loaded a shopping cart with

merchandise, including three jackets and five perfume sets.  She cut a theft detection

_____

      [1] The following facts are drawn from "the record viewed in the light most
favorable to the government."  *United States v. Matousek*, 131 F. App'x 641, 644 (10th
Cir. 2005) (citing *United States v. Lewis*, 240 F.3d 866, 870 (10th Cir. 2001)).

device off at least one item and, after wrapping the device in tissue paper, threw the device away in a trash receptacle inside the store. Defendant left the Exchange with her loaded cart without paying. She was confronted outside the store by an employee of the Exchange's loss prevention department. Base security officers responded and searched defendant's purse, discovering two additional purses, which had been taken from the Exchange, and a pair of wire cutters.

On December 20, 2013, defendant was served with a violation notice alleging that she had shoplifted from the Exchange. On August 14, 2014, the government filed an information charging defendant with (1) Theft of Government Property of a value less than $1000 in violation of 18 U.S.C. § 641 and (2) Unlawful Acts – Theft Detection Devices, in violation of Colo. Rev. Stat. § 18-4-417 as assimilated by 18 U.S.C. § 13. Docket No. 6. The penalty sheet attached to the information stated that Count 2 was a "Class 1 Misdemeanor" with a penalty of "Max 18 months." Docket No. 6-1.

On September 29, 2014, defendant signed a consent to proceed before a magistrate judge. Docket No. 7.[2] Defendant was arraigned on October 9, 2014. Docket No. 9. On October 23, 2014, the government filed an amended penalty sheet, which revised the listed maximum penalty for Count 2 to no more than "1 year imprisonment." Docket No. 11.

On October 14, 2014, the magistrate judge set a motions hearing for December 2, 2014 and set defendant's trial to begin on December 15, 2014. Docket No. 10. At the motions hearing, the magistrate judge set a December 8, 2014 trial preparation

---

[2] The consent form acknowledges that the magistrate judge explained the "maximum possible penalties" to defendant. Docket No. 7.

conference.  Docket No. 30 at 3.  On the morning of December 8, 2014, defendant filed a motion to continue the trial so that she could investigate the possibility of presenting expert psychological evidence to show that she lacked the necessary mens rea to commit the charged offenses.  Docket No. 32 at 1, ¶ 3.  In particular, defendant stated that she was scheduled to be examined by her psychologist, Dr. Dana Satir, regarding her "psychological maladies and dissociative disorders."  *Id*., ¶¶ 3-4.  At the trial preparation conference that afternoon, the government objected to granting a continuance, noting that defendant had raised the same issue at an August 14, 2014 hearing when requesting a 60-day delay before the Information was filed.  Docket No. 123 at 9:13-10:5; *see also* Docket No. 5 (minute entry from August 14, 2014 hearing noting "Discussion regarding setting trial dates and resetting Arraignment out 60 days.").  Over the government's objection, the magistrate judge vacated the trial and granted an ends of justice continuance.  Docket No. 34 at 1-2.  The magistrate judge set a January 27, 2015 deadline for defendant to make her psychological expert disclosures to the government.  *Id*. at 2.  She set a February 9, 2015 deadline for the government's expert disclosures.  *Id*.  The trial was reset for February 23, 2015.  *Id*.

Defendant did not comply with the disclosure deadline.  Instead, on February 6, 2015, defendant emailed her witness list to the government and the magistrate judge's chambers.  Docket No. 39-1 at 2.  Defendant's witness list included Dr. Lon Kopit, who defendant said would be called to "testify to the mental health issues of defendant and her lack of the requisite mental state (mens rea) elements of the crimes charged."  *Id*. at 1, ¶ 1.  On February 9, 2015, the government moved to exclude Dr. Kopit's testimony

as being untimely disclosed and, in the alternative, requested a hearing pursuant to Fed. R. Evid. 702. Docket No. 39 at 1.

On February 10, 2015, the magistrate judge held a second trial preparation conference, at which she granted the government's motion to exclude. Docket No. 40. The magistrate judge found that defendant had failed to provide timely notice of Dr. Kopit's proposed testimony. Docket No. 124 at 10, ll. 8-20, and at 16, ll. 1-11. The magistrate judge continued the remainder of the trial preparation conference because the parties were not properly prepared. Docket No. 40 at 2.

On February 12, 2015, defendant filed a motion requesting that the magistrate judge reconsider whether to bar Dr. Kopit from testifying. Docket No. 49. The magistrate judge held the third and final trial preparation conference the next day. Docket No. 51. The magistrate judge declined to reconsider her prior order barring Dr. Kopit from testifying. *Id*. at 1; Docket No. 109 at 4 (citing *United States v. Adams*, 271 F.3d 1236, 1244 (10th Cir. 2001)).

The trial began on February 23, 2015. Docket No. 57. The trial lasted three days and was tried to a jury. Docket Nos. 57-59. The defendant testified in her own defense. Docket No. 58 at 4. On February 25, 2015, the jury convicted defendant on both counts. Docket No. 59-3.

On May 22, 2015, the magistrate judge held a sentencing hearing. Docket No. 67. The magistrate judge found that defendant committed perjury through her trial testimony and applied a two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1. Docket No. 104 at 25:13-26:19. The magistrate judge imposed concurrent sentences of thirty days imprisonment on each of the two counts and one

4

year of supervised release.  Docket No. 74 at 2-3.  She ordered restitution in the
amount of $734.41, which was the full retail value of the stolen merchandise.  *Id.* at 5;
Docket No. 104 at 24:16-19.  Judgment entered on May 28, 2015.  Docket No. 74 at 1.
The present appeal followed.  *See* Docket No. 80.[3]

## II.  DISCUSSION

In an appeal from a misdemeanor conviction by a magistrate judge, the "scope
of the appeal is the same as in an appeal to the court of appeals from a judgment
entered by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).  The standard of review
depends upon whether the reviewed issue presents questions of fact, questions of law,
or mixed questions of fact and law.  *Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir.
1986).  The Court reviews legal findings de novo and factual findings for clear error.
*Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001) (citing *Pierce v. Underwood*,
487 U.S. 552, 558 (1988)).  Defendant raises five alleged errors subject to varying
standards of review: (1) that the magistrate judge lacked subject matter jurisdiction to
hear Count 2, Docket No. 129 at 16-18; (2) that the magistrate judge abused her
discretion in excluding defendant's psychological expert for failure to meet the
disclosure deadline, *id*. at 18-25; (3) that the magistrate judge abused her discretion by
allowing the government to question defendant about a pending state shoplifting
charge, *id*. at 26-31; (4) that the magistrate judge erred by applying an enhancement to

---

[3] Acting pro se, defendant initially filed a notice of appeal to the Tenth Circuit,
Docket No. 68, but the Tenth Circuit dismissed the appeal for want of jurisdiction after
finding that defendant's pro se "notice of appeal was effective to vest jurisdiction in the
district court."  Docket No. 77 at 1 (citing *United States v. Pethick*, 513 F.3d 1200, 1202
(10th Cir. 2008)).

the sentencing guidelines based on perjury, *id*. at 31-34; and (5) that the magistrate judge clearly erred in ordering restitution for the full retail value of the items that defendant took from the Exchange. *Id*. at 35-38.

## A.  Subject Matter Jurisdiction

Because this district has designated them to hear misdemeanor cases, magistrate judges have jurisdiction to "try persons accused of, and sentence persons convicted of, misdemeanors committed within" the District of Colorado.  18 U.S.C. § 3401; *see also* 28 U.S.C. § 636(a)(3); D.C.COLO.LCrR 57.1(b)(16).  Under Colorado law, Count 2 of the information, charging defendant with removing theft detection devices, is classified as a "class 1 misdemeanor," Colo. Rev. Stat. § 18-4-417, subject to a maximum sentence of eighteen months imprisonment.  Colo. Rev. Stat. § 18-1.3-501(1)(a).  Persons convicted in federal court of incorporated state law crimes are "subject to a like punishment."  18 U.S.C. § 13(a).  This provision requires "federal sentencing courts to abide [by] any maximum and minimum prison terms [pre]scribed by state law for an assimilated crime."  *United States v. Christie*, 717 F.3d 1156, 1171 (10th Cir. 2013) (citations omitted).  Under federal law, offenses "not specifically classified by a letter grade in the section defining it" are classified based on the "maximum term of imprisonment authorized."  18 U.S.C. § 3559(a).  Crimes subject to maximum terms of imprisonment from five days to one year are classified as misdemeanors.  18 U.S.C. § 3559(a)(6)-(8)*; see also Gomez v. United States*, 490 U.S. 858, 870 n.18 (1989) ("A misdemeanor is any offense for which the maximum term of imprisonment that may be imposed does not exceed one year." (internal quotation

marks omitted)).  An offense with a maximum term of imprisonment of eighteen months is a Class E felony under federal law.  18 U.S.C. § 3559(a)(5).

Defendant argues that the magistrate judge lacked jurisdiction to hear this case because Count 2 carries a potential punishment of more than one year of imprisonment under Colorado law.  Docket No.129 at 8.  The issue of subject matter jurisdiction is reviewed de novo.  *Niemi v. Lasshofer*, 770 F.3d 1331, 1344 (10th Cir. 2014) (citing *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Trust*, 744 F.3d 623, 628 (10th Cir. 2014)).

The Tenth Circuit has held that a "magistrate judge's lack of statutory authority is not a jurisdictional defect, so any objection is waived if not raised."  *Clark v. Poulton*, 963 F.2d 1361, 1367 (10th Cir. 1992).  Here, defendant consented to the magistrate judge presiding over her trial and sentencing and also failed to raise her jurisdictional argument in front of the magistrate judge.  Defendant acknowledges that this issue is "possibly foreclosed by circuit precedent."  Docket No. 129 at 16.  Nevertheless, defendant wants to preserve the issue for appeal.

The Court agrees that the issue of whether defendant waived her objection to the magistrate judge's jurisdiction is foreclosed by the Tenth Circuit's decision in *Clark*. As a result, the Court concludes that defendant's jurisdictional argument is waived.

### B.  Exclusion of Psychological Expert

The magistrate judge excluded defendant's mental health expert, Dr. Lon Kopit, from testifying at trial.  Docket No. 124 at 10:3-20 and at 17:1-6.  Rulings excluding evidence are reviewed for an abuse of discretion.  *Adams*, 271 F.3d at 1243 (citing *United States v. Rice*, 52 F.3d 843, 847 (10th Cir. 1995)).

In considering whether to exclude evidence on the basis of untimely disclosure, a court considers "three factors: (1) the reason for the delay in disclosing the witness; (2) whether the delay prejudiced the other party; and (3) the feasibility of curing any prejudice with a continuance." *Adams*, 271 F.3d at 1244 (citing *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988)).

Defendant argues that the magistrate judge erred in barring defendant from presenting expert testimony from Dr. Kopit. Docket No. 129 at 21. First, defendant argues that the sanction imposed for untimely disclosure was unduly harsh because defense counsel's failure to meet the deadline was not in bad faith. *Id*. at 21-23. Second, defendant argues that the magistrate judge's decision to exclude was predicated on legal error insofar as the magistrate judge doubted the admissibility of Dr. Kopit's testimony as to defendant's mens rea. *Id*. at 23-25.[4]

Defendant emphasizes the lack of bad faith and a statement by the Tenth Circuit that "[i]t would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002). However, in *Adams,* the Tenth Circuit found that a district

---

[4] Defendant also argues in a footnote that defendant did timely comply with Fed. R. Crim. P. 12.2(b) when, at the December 8, 2014 hearing, she "explained that the expert psychologist would evaluate Ms. Paup and report on her 'psychological maladies and dissociative disorder.'" Docket No. 129 at 23 n.4. However, compliance with Fed. R. Crim. P. 12.2(b) is not the issue. The issue is instead whether defendant complied with the magistrate judge's order, which called for defendant to disclose the written summary of defendant's mental health expert's expected testimony by the deadline imposed. Docket No. 123 at 21:3-22:15. Defendant does not argue that the magistrate judge lacked authority to issue such an order and, in any event, it was not error for the magistrate judge to require defendant to provide such information by a deadline to prevent further delays of the trial. *See* Fed. R. Crim. P. 16(b)(1)(C).

court's decision to exclude expert psychological testimony "could be sustained on the grounds of untimeliness alone" under the first *Wicker* factor, notwithstanding a lack of bad faith. *Adams*, 271 F.3d at 1244. The defendant in *Adams* disclosed a psychological report to the government more than a month after the relevant deadline and three days before trial, *id*. at 1243, which "left the government no opportunity to conduct its own psychological examination of the defendant, or otherwise mount a rebuttal." *Id*. at 1244. The government indicated that it would need up to 120 days to conduct its own psychological examination of the defendant. *Id*. Given that the government's need to conduct an examination "would significantly delay the trial," the Tenth Circuit found that the trial court's exclusion of the psychologist's testimony was proper. *Id*.

In relation to the first *Wicker* factor, the magistrate judge considered defendant's explanations for her failure to comply with the disclosure deadline and rejected them. In particular, defendant did not offer any justification for her failure to request an extension of the disclosure deadline, Docket No. 124 at 11:3-14 and at 15:15-16:20, did not explain why she simply listed Dr. Kopit as a witness without providing the government with some indication of Dr. Kopit's expected testimony, *id*. at 15:15-25, and, by the time of the last two trial preparation conferences, still had not produced Dr. Kopit's report. Docket No. 124 at 11:25-26:1; Docket No. 109 at 19:1, 42:17.

In relation to the second and third *Wicker* factors, the magistrate judge credited the government's claims that it was prejudiced by defendant's untimely and insufficient disclosure. When the magistrate judge asked the government what it could do to cure the prejudice, the government indicated that it would need to receive the expert's report,

review the records that the report relied on, review the records of Dr. Satir, and then determine whether to seek a medical examination of the defendant under Fed. R. Crim. P. 12.2. Docket No. 109 at 29-33. The magistrate judge reasonably concluded that the government's investigation into the defendant's mental state would take considerable time. *Id*. at 40:17-20. The judge noted that

> we can set a different trial date if we absolutely have to. But I'm not inclined to do that on the eve of trial like this. One reason is because I don't have any time to set it. I don't have another date to give you for another month or so. And the Government from what they've told me, boy, that's going to take a lot longer than a month to get all these medical records and have a 702 hearing and interview these experts, maybe take a deposition.

Docket No. 109 at 40:12-20. The fact that the magistrate judge was faced with a considerable delay of the trial if she allowed the expert's testimony justifies the exclusion of the testimony on timeliness grounds alone, as was the case in *Adams,* where the trial court was also faced with considerable delay.

Finally, the magistrate judge did not abuse her discretion in excluding Dr. Kopit's testimony because it constituted a reasonable effort to manage her docket. At the pretrial conference on February 10, 2015, the magistrate judge expressed frustration that the defense had "a whole half year" to find an expert, but failed to properly endorse one. Docket No. 124 at 12:20-21. The magistrate judge noted that, in addition to not making any progress in producing an expert report, defendant was ignoring the court's rules: "you do not care about the dates that I set; you do not care about the deadlines that I've set." *Id.* at 13:3-5. Given defendant's persistent failures to follow court rules and to disclose the expert report, the magistrate judge did not abuse her discretion in holding firm on deadlines that she had already extended once to no effect. *See, e.g.,*

10

Docket No. 123 at 18:20-24, at 20:18-19, and at 25:11-14; Docket No. 124 at 10:9-18 and at 12:17-20.

Regarding the magistrate judge's various comments about the admissibility of Dr. Kopit's testimony, the Court concludes that such comments do not constitute legal error. As an initial matter, the magistrate judge's decision to exclude Dr. Kopit's testimony was based on the untimeliness of the disclosure and an effort to enforce her rulings and manage her docket. Docket No. 124 at 10:3-20 and at 17:1-6. Moreover, the magistrate judge was correct that Dr. Kopit's testimony, as described in defendant's witness list, would have been partly inadmissible. Defendant's witness list stated that Dr. Kopit would testify about defendant's "mental health issues . . . and her lack of the requisite mental state (mens rea) elements of the crimes charged." Docket No. 39-1 at 1, ¶ 1.0. The magistrate judge accurately noted that Dr. Kopit could not opine directly on whether defendant lacked the requisite mental state, as the witness list indicated he would. Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."). Defendant acknowledged this limitation, Docket No. 109 at 11:20, but maintained that Dr. Kopit could bring up facts to the jurors so that they could draw inferences about defendant's mental state. *Id*. at 10:23-25. The magistrate judge responded, "Right." *Id*. at 11:1. Moreover, rather than conclusively determining that any portion of Dr. Kopit's testimony was inadmissible, the magistrate judge stated that the issues would have to be resolved through "hearings outside the jury on that or motions in limine." *Id*. at 43:13-14. The

magistrate judge's comments about admissibility do not constitute an erroneous view of the law that tainted her exclusion decision.

The Court finds that the magistrate judge did not abuse her discretion in excluding Dr. Kopit's testimony.

## C.   Cross-Examination on Defendant's Pending State Charge

The magistrate judge permitted the government to cross-examine defendant at trial about a separate alleged shoplifting incident that occurred before plaintiff was stopped at the Exchange.  During direct, defendant testified:

> Q:  Okay.  And then let's go back to the video, okay.  So did you intend to not pay for these items or why did you put it in the pocket?
>
> A:  There was no intention.  I put it in my pocket just because I thought it was okay.  I didn't – I don't know the laws of what you should or shouldn't do inside of a store.  I don't know, you know, if I'm supposed to go talk to somebody about something.  There's – there's nothing that says how you're supposed to be as a shopper.

Docket No. 102 at 188:18-189:1.  Due to defendant's testimony that her actions were a mistake, the magistrate judge ruled that defendant had opened the door to the government questioning her about the earlier shoplifting incident and the fact that she was charged in that matter.  Docket No. 103 at 15.  The magistrate judge gave the jury a limiting instruction before the government's cross-examination:

> [O]ver the defendant's objection I believe you will now hear evidence of other acts engaged in by the defendant [that] I have ruled admissible. You may consider that evidence only as it bears on the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, and for no other purpose.  Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.

Docket No. 103 at 117:9-19.  The government cross examined defendant as follows:

Q: Let's return to your assertion that there's nothing which says how you were supposed to be as a shopper. Do you remember that statement you made?

A: I do.

Q: What about the law itself? Does that serve as something which tells people how they must behave as shoppers?

A: I haven't seen a law book on it.

Q: You've actually had the opportunity prior to this occasion to have someone specifically address the law with you; is that right?

A: Specifically address the law in what matters?

Q: On August 29th, 2013 at a Kohl's either in Arapahoe or Douglas County you were confronted about a shoplifting incident?

A: Yes.

Q: And on September 30th, 2013 a criminal complaint was issued in state court on a crime of concealing goods?

A: Concealing goods?

Q: That is a state offense; is that right?

A: I don't know the law terminology.

Q: You appeared in court on that prior to this offense on December 20th, 2013?

A: I have not appeared in court.

Q: You've never been in court for that case?

A: No, I have not.

Q: Have you seen the criminal complaint against you?

A: No, I have not.

Q: You've never read that criminal complaint?

A:  I was given a summons, yes.

Q:  Okay.  And what did the summons assert that you had done wrong?

A:  It said that it was – I can't remember the exact same name, but shoplifting basically.

Q:  And it mentioned concealing goods as the lead charge on that case?

A:  I don't recall that being the lead charge, but nothing was concealed.

Q:  There's an additional charge for removal of theft detection devices?

A:  No, there was not.

Q:  Is there a charge for tampering with theft detection?

A:  No.

Q:  You would agree that a criminal complaint filed in a state court is a pretty clear indication that the way one is behaving as a shopper is not appropriate?

A:  I would agree to that, yes.

Docket No. 103 at 117:21-119:19.

"Admission of evidence under Federal Rule of Evidence 404(b) is reviewed under an abuse of discretion standard."  *United States v. Morris*, 287 F.3d 985, 989-90 (10th Cir. 2002); *see also United States v. Diaz*, 679 F.3d 1183, 1190 (10th Cir. 2012).

Defendant argues that the government should not have been allowed to cross-examine her about pending state shoplifting charges pursuant to Fed. R. Evid. 404(b). Docket No. 129 at 28 (citing *United States v. Wilson*, 244 F.3d 1208, 1217-18 (10th Cir. 2001), *as corrected on reh'g* (May 10, 2001).  In *Wilson*, the Tenth Circuit reiterated that past wrongs are admissible "if certain clearly defined conditions are met, *see United States v. Ramirez*, 63 F.3d 937, 942-43 (10th Cir.1995), but the rule requires more than

14

'simply testimony that records indicate an arrest took place,' *[United States v. Robinson*, 978 F.2d 1554, 1560 (10th Cir. 1992)]." *Wilson*, 244 F.3d at 1218. The prerequisite conditions for admission of prior bad acts under Rule 404(b) are that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed.R.Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*Ramirez*, 63 F.3d at 942 (citations omitted). Each of these prerequisite conditions was present here. First, the government offered testimony to show defendant's intent and lack of mistake, which are proper purposes under Rule 404(b). Docket No. 103 at 54:13-23; *see also Ramirez*, 63 F.3d at 942. Second, the evidence was relevant because it rebutted her testimony that she did not intend to steal and took the items by mistake. Third, the magistrate judge considered the evidence under Fed. R. Evid. 403. Docket No. 103 at 58:16-22. Fourth, the magistrate judge gave a proper limiting instruction. Docket No. 103 at 117:9-19. Because the prerequisites for admission under Rule 404(b) were satisfied, the Court finds that the magistrate judge did not abuse her discretion in allowing the government to cross-examine defendant about the prior alleged shoplifting incident. The Court does not reach the issue of whether the admission of the evidence was harmless because the Court finds no error.

### D. Obstruction of Justice Enhancement for Perjury

The magistrate judge applied a two-level sentence enhancement in calculating

the guideline range based on a finding that defendant perjured herself.[5]  At the

sentencing hearing, the magistrate judge stated:

> Now, on the two point addition for obstruction of justice I agree with the
> probation department that the two-level increase for obstruction of justice
> is appropriate in this case.  Miss Paup clearly in my estimation committed
> perjury. . . .  What happened in this case is Miss Paup got on the witness
> stand and lied repeatedly and said things that were clearly not true, things
> that she – she had no business or reason saying, and that puts this in a
> whole different light.  That is obstruction of justice.  That is not putting the
> government to its proof.  That is lying in order to get out of being found
> guilty for what you were doing on the videotape I might add that the jury
> was able to see.  And for that reason the obstruction of justice adjustment
> applies of two points.
>
> * * *
>
> When you lie about what you did you may – she made extremely specious
> explanations of putting Coach purses in another bag and hiding them
> when -- when her behavior was on tape.  She accused the store people of
> bad faith in trying to go retrieve the evidence, the tags that she had cut off,
> the North Face jacket and at least one other thing.  And, again, on tape it
> was visualized that she put those in the garbage can wrapped in the
> Kleenex that she was holding in her hand.

Docket No. 104 at 25:13-26:19.

Interpretations of the sentencing guidelines are reviewed de novo and related

factual findings are reviewed for clear error.  *United States v. Smith*, 534 F.3d 1211,

1226 (10th Cir. 2008) (citing *United States v. Chee*, 514 F.3d 1106, 1116 (10th Cir.

2008)).

---

[5] The sentencing guidelines recommend the offense level be increased by two
levels:

> [i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or
> impede, the administration of justice with respect to the investigation,
> prosecution, or sentencing of the instant offense of conviction, and (2) the
> obstructive conduct related to (A) the defendant's offense of conviction and any
> relevant conduct.

U.S.S.G. § 3C1.1.

Defendant argues that the magistrate judge erred in two ways by applying the obstruction of justice enhancement. Docket No. 129 at 31-34. First, defendant claims that the magistrate judge "failed to make any independent factual findings adequate to support the obstruction enhancement under Tenth Circuit law." *Id*. at 33. Second, defendant claims that she did not commit perjury and that her testimony was "more likely due to confusion, mistake, or faulty memory" in light of "her history of mental health issues." *Id*. at 34 (internal quotation marks omitted).

First, the Court finds that the magistrate judge's factual basis for applying the obstruction of justice enhancement is sufficiently specific. "The elements of perjury are that a witness: (1) when testifying under oath, gives false testimony; (2) concerning a material matter; (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995) (citation omitted). The Supreme Court has held that it is "preferable . . . to address each element of the alleged perjury in a separate and clear finding." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). "The . . . determination that enhancement is required is sufficient, however, if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id*. The Tenth Circuit has further adopted a "prudential requirement" that the court "indicate or describe the nature of the testimony found to be perjurious." *Massey*, 48 F.3d at 1574.

In finding that defendant obstructed justice, the magistrate judge specifically noted the conflicts between defendant's testimony and the videotape evidence, defendant's explanations for placing other purses inside her purse, and defendant's

testimony related to cutting off and disposing of the theft detection devices.  *See* Docket No. 104 at 25:13-26:19.  In making these findings, the magistrate judge sufficiently "specif[ied] which portion of the defendant's testimony [the court] consider[ed] to be false."  *United States v. Markum*, 4 F.3d 891, 897 (10th Cir. 1993).  Such testimony was material to the determination of guilt because such testimony was directly related to whether defendant committed the acts charged and was, therefore, "designed to substantially affect the outcome of the case."  *Id*. at 898.  Further, the magistrate judge made findings about defendant's reasons for giving such testimony, finding that defendant lied "in order to get out of being found guilty for what [she was] doing on the videotape."  Docket No. 104 at 26:3-5.  The Court finds that the magistrate judge made sufficiently specific findings on the elements of perjury .

Second, the Court finds that the magistrate judge did not clearly err in finding the defendant intended to give false testimony.  The magistrate judge had an opportunity to observe defendant's testimony and judge her credibility.   The magistrate judge also compared the defendant's testimony about her mental state to evidence that contradicted defendant's claim that she was not aware of the significance of her actions, such as concealing the tags she had cut off merchandise and bringing wire cutters and special bags with her to the store.  Docket No. 104 at 39:3-22.  It was not clear error for the magistrate judge to conclude that defendant committed perjury and to apply the obstruction of justice enhancement to her offense level under the guidelines.  *See United States v. Hansen*, 964 F.2d 1017, 1021 (10th Cir. 1992) (declining to reverse the trial court's finding on an obstruction of justice enhancement where conflicting evidence did not "clearly indicate" the finding was incorrect).

18

## E. Restitution

The magistrate judge ordered restitution in the amount of $734.41, which is the full retail value of the items defendant took from the Exchange. Docket No. 129 at 35; Docket No. 104 at 24:16-19.

Courts must order a defendant to pay restitution under the Mandatory Victims Restitution Act ("MVRA") if the defendant is convicted of an offense "in which an identifiable victim . . . has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The "principal aim" of restitution under the MVRA is to "ensure that crime victims, to the extent possible, are made whole for their losses." *United States v. Ferdman*, 779 F.3d 1129, 1132 (10th Cir. 2015) (citing *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009)). In the case of stolen goods, a court must order the "return [of] the property to the owner of the property or someone designated by the owner." 18 U.S.C. § 3663A(b)(1)(A). If, however, the "return of the property . . . is impossible, impracticable, or inadequate," then defendant must be ordered to "pay an amount equal to . . . the value of the property on the date of the damage, loss, or destruction . . . less . . . the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B). A court "may not order restitution in an amount that exceeds the actual loss caused by the defendant's conduct, which would amount to an illegal sentence constituting plain error." *James*, 564 F.3d at 1243.

The legality of a restitution order is reviewed de novo and underlying fact findings are reviewed for clear error. *United States v. Zhou*, 717 F.3d 1139, 1152 (10th Cir.

2013).  The amount of restitution awarded is reviewed for abuse of discretion.

*Ferdman*, 779 F.3d at 1131.

Defendant argues that the magistrate judge's order to reimburse the full retail

value of the goods is unlawful because it does not account for the value of those goods

that can be returned to the Exchange.  Docket No. 129 at 36.  Defendant also argues

that there is no evidence that the loss sustained by the Exchange is equivalent to the

full retail value of the merchandise.  *Id*.

The government argues that the restitution order for the full retail value of the

merchandise was proper because the goods have not yet been returned to the

Exchange for sale.  Docket No. 133 at 34.  Yet, the government also acknowledges that

a "court may not order restitution . . . in an amount greater than the total loss caused."

*Id*. at 35 (citing *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993)).  In an

apparent attempt to reconcile these positions, the government claims that, after the

goods are returned to the Exchange, "proceeds from [their] sale can be credited to Ms.

Paup's restitution judgment."  *Id*. at 36.   The government cites two cases where the

value of sales was deducted from the amount owed, *United States v. Locke*, 759 F.3d

760 (7th Cir. 2014), and *United States v. Robinson*, 2011 WL 1897678 (N.D. Ga. Apr.

21, 2011).  Docket No. 133 at 36.  In each of those cases, however, the property was

sold before the restitution order was entered.  *Locke*, 759 F.3d at 763; *Robinson*, 2011

WL 1897678, at *3-*4.  The government cites no authority that supports its proposed

scheme, in which a restitution order is entered for the full retail value of the goods and

then some credit is later provided if those goods are sold.  Additionally, the

government's proposal facially conflicts with the statutory scheme, which calls for a

determination of the value of the returned items "as of the date the property is returned," not some later date. 18 U.S.C. § 3663A(b)(1)(B)(ii).

The Tenth Circuit has specifically refused to adopt a "rule that where retail goods are stolen, the proper measure of restitution necessarily is the undiscounted retail price of those goods." *Ferdman*, 779 F.3d at 1137. In *Ferdman*, the defendant stole cellular telephones that would have otherwise been sold at subsidized retail prices. *Id*. at 1136-37. The court held that, in the case of the theft of a "fungible or readily replaceable good like a cell phone," the appropriate measure of loss would be "something akin to replacement or wholesale cost" of the stolen goods, rather than the full retail price. *Id*. at 1140. The court emphasized that the "controlling metric for an award of restitution pursuant to the MVRA *in every case* is *actual loss suffered*; nothing more, nothing less." *Id*. at 1139 (emphasis in original). Finding a lack of evidence in the record that the victim's losses were equivalent to the retail price of the stolen cell phones, the court vacated the restitution award. *Id*. at 1141.

Here, as defendant argues, there is no evidence that the actual loss sustained by the Exchange was equivalent to the full retail price of the items stolen. *See* Docket No. 129 at 38. Accordingly, the Court must vacate the magistrate judge's restitution award, notwithstanding the highly deferential abuse of discretion standard. *See Ferdman*, 779 F.3d at 1137.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's conviction is affirmed in part and reversed in part. It is further

**ORDERED** that this case is remanded for further proceedings.

DATED March 12, 2018.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge